UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

STEVEN WEBER,

                              Plaintiff,                    DECISION AND ORDER

-vs-

                                                           23-CV-499-MAV
TOWN OF LEROY,

                              Defendant.

---

## INTRODUCTION

Plaintiff Steven Weber commenced this action against Defendant Town of Leroy (the "Town") under 42 U.S.C. § 1983, alleging, *inter alia*, that the Town violated his procedural due process rights under the Fourteenth Amendment by destroying and confiscating his property "without authorization under law." ECF No. 1 ¶ 39. Presently before the Court is Weber's motion for a preliminary injunction seeking to enjoin the Town from selling 190 of his vehicles ("Subject Vehicles") at auction. ECF No. 33 at 1. The Court issued a temporary restraining order on March 21, 2025, enjoining the sale pending resolution of the instant motion. ECF Nos. 36–38; 53.

For the reasons stated below, the Court GRANTS Weber's motion for a preliminary injunction and directs him to post a bond in the amount of $100,000.

## BACKGROUND

Weber owns approximately 25 acres of land in a rural area of the Town ("Property"). 33-2 ¶ 4; ECF 64 at 8:15–23, 10:1–4, 11:2–6.[1] Weber used the Property

---

[1] Unless otherwise noted, all page references are to those generated by CM/ECF, which appear in the

to store the Subject Vehicles, which he collected over a number of years. ECF No. 33–2 ¶ 4; ECF No. 64 at 14:16–20. The Subject Vehicles are vintage, historic automobiles worth an estimated $4.25 million. ECF No. 33–2 ¶¶ 5–6; ECF No. 64 at 16:23–17:13. Weber planned to feature them in a museum. ECF No. 33–2 ¶ 5; ECF No. 64 at 17:11–13.

## I. State Court Proceeding

On September 30, 2019, the Town filed a petition against Weber in New York State Supreme Court ("NYS Supreme Court"), seeking an order compelling him to address unsafe buildings and unlicensed vehicles on the Property pursuant to Chapters 53 and 96 of the Code of the Town. ECF No. 33-3 ¶ 4; ECF No. 40–1. The parties thereafter engaged in negotiations that resulted in entry of a stipulated court order ("SCO") in NYS Supreme Court on November 16, 2020. ECF No. 33-3 ¶ 5; ECF No. 33–4 (a copy of the SCO signed by Hon. Charles N. Zambito). Pursuant to the SCO, Weber agreed to repair the unsafe buildings in accordance with engineering plans and to remove all unlicensed vehicles on the Property from public view. ECF No. 33-4 at 2–3. Paragraph Six of the SCO states:

> In the event the Work is not performed and completed, and the vehicles removed from public view, by February 28, 2021, the Town of LeRoy, including its Code Enforcement Officer, retained contractors and other agents acting on behalf of the Town of LeRoy, shall be hereby authorized entry upon the Property to dispose of the debris from the collapsed portions of the front of Buildings 5 and 7 in accordance with the Plans, and remove and have impounded the vehicles in public view, thereby rendering the Property in compliance with §§ 53-12 and § 96 of the Code of the Town of LeRoy as determined by the Town Code Enforcement Officer[.]

------

header of each page.

*Id.* at 4. The NYS Supreme Court "retain[ed] jurisdiction over the enforcement of th[e] [SCO]." *Id.* at 5 ¶ 11.

On February 16, 2022, the Town advised Weber that it planned to inspect the Property to assess compliance with the SCO. ECF No. 33–3 ¶ 7. Following the inspection, the Town determined that Weber failed to make the necessary modifications. ECF No. 1 at 3. Weber received a phone call from a Town employee on March 7, 2022, and learned for the first time that the Town planned to impound the Subject Vehicles.[2] ECF No. 64 at 24:6–12, 25:8–15. Over Weber's objections, the Town seized the Subject Vehicles on March 9, 2022, pursuant to the Town's purported authority under Paragraph Six of the SCO. ECF No. 33–3 ¶¶ 8–10. The Town did not receive a judicial finding of non-compliance before seizing the Subject Vehicles. ECF No. 64 at 210:13–211:9; 211:3–9 (Town attorney explaining opinion that Paragraph Six was self-executing and a further court order was unnecessary). Weber claims that he spent thousands of dollars and hundreds of hours attempting to bring the Property into compliance with the SCO. ECF No. 64 at 51:17–53:8, 69:19–21.

On or around September 30, 2022, after learning that the Town planned to sell the Subject Vehicles at auction, Weber filed a motion in state court for a preliminary injunction and a temporary restraining order. ECF No. 33–5 at 2, 4. The state court issued the temporary restraining order, which expired on November 17, 2022. *Id.* The parties thereafter participated in court conferences and mediation, but the issue of

---

[2] From the testimony at the hearing, the phone call did not appear to be an official notice from the Town apprising Weber of the plan to seize his vehicles, but rather, a call made by a now-former employee that did not provide much information in fear of getting in trouble.

the preliminary injunction was not addressed until August 2024, when the Town's counsel requested a decision on the motion. *Id.* In a decision and order entered on February 25, 2025, the state court denied Weber's request for a preliminary injunction. *Id.* at 5. The court observed that Weber had a pending federal action related to the seizure of the Subject Vehicles and that his request for a preliminary injunction should be made before the federal court. *Id.*

## II. Weber's Federal Lawsuit

Weber commenced his federal action on June 7, 2023. ECF No. 1. As relevant here, Weber alleges that the Town violated his procedural due process rights under the Fourteenth Amendment by seizing the Subject Vehicles without first obtaining a court order finding that he failed to comply with the terms and conditions of the SCO. ECF No. 1 ¶¶37–54. Weber asserts that he was entitled to be heard on the issue of compliance before the Town could lawfully seize the vehicles. *Id.* On May 1, 2024, United States Magistrate Judge Kenneth Schroeder, Jr., issued a Report and Recommendation ("R&R"), denying the Town's motion to dismiss. ECF No. 9 at 20. On Weber's procedural due process claim, Magistrate Judge Schroeder explained that Weber was "entitled to some pre-deprivation process" before the Town could lawfully deprive him of the Subject Vehicles and that Weber plausibly alleged a due process violation. *Id.* at 16–17. United States District Judge John L. Sinatra, Jr. thereafter adopted the R&R. ECF No. 28.

On March 13, 2025, Weber again learned that the Town planned to sell the Subject Vehicles at auction. ECF No. 33–2 ¶ 9. Weber sought to enjoin the sale by

filing the instant motion for a temporary restraining order and preliminary injunction. ECF No. 33. On March 21, 2025, the Court granted Weber's request for a temporary restraining order and enjoined the Town from selling the Subject Vehicles while the preliminary injunction motion remained pending. ECF Nos. 36–38; 53. The case was transferred to the undersigned on April 24, 2025. The motion is fully briefed, ECF Nos. 40–41, 51. The parties appeared for a preliminary injunction hearing on May 28, 2025, where they presented documentary evidence and witness testimony.

**LEGAL STANDARD**

"A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Krick v. Town of Lyons, New York*, No. 24-CV-06178 EAW, 2024 WL 2240088, at *5 (W.D.N.Y. May 17, 2024) (quoting *Moore v. Consol. Edison Co. of New York*, 409 F.3d 506, 511 (2d Cir. 2005)). A district court may grant a preliminary injunction when the movant demonstrates: (1) a likelihood of success on the merits; (2) irreparable harm in the absence of an injunction; (3) a balance of hardships tipping in their favor; and (4) that the public's interest would not be disserved by issuance of a preliminary injunction. *Gairy v. City of New York*, No. 23-CV-00802 (NGG) (SJB), 2024 WL 1468335, at *1 (E.D.N.Y. Apr. 4, 2024); *see Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015). "In considering a motion for a preliminary injunction, the Court may rely on affidavits, depositions, and sworn testimony." *Greater Chautauqua Fed. Credit Union, v. Marks*, 600 F. Supp. 3d 405, 415 (S.D.N.Y. 2022*); see Mullins v. City of New York*, 626 F.3d 47, 52 (2d Cir. 2010)

(explaining that even "hearsay evidence may be considered by a district court in determining whether to grant a preliminary injunction."). The Court "has wide discretion in determining whether to grant a preliminary injunction[.]" *Moore*, 409 F.3d at 511.

## DISCUSSION

Weber contends that he is entitled to a preliminary injunction because he is likely to succeed on the merits of his procedural due process claim, will suffer irreparable injury in the absence of an injunction, and has demonstrated that equitable and public interest considerations weigh in favor of such relief. ECF No. 33–1 at 8–9. The Court agrees that Weber is entitled to a preliminary injunction for the reasons that follow.

## I. Irreparable Harm

"A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) ("*Faiveley*") (quotation omitted). "This requirement must therefore be satisfied before the other requirements for an injunction can be considered." *State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*, ("*State Farm*") 120 F.4th 59, 80 (2d Cir. 2024) "To make this showing, the moving party 'must demonstrate that absent a preliminary injunction [it] will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm.'" *State Farm*, 120 F.4th at 80 (quoting *Faiveley*, 559 F.3d at 118). "Thus, irreparable

harm exists where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." *State Farm*, 120 F.4th at 80 (quotation omitted). But "[w]here there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances." *Faiveley*, 559 F.3d at 118 (quotation omitted). "Therefore, the moving party must show that there is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation." *State Farm*, 100 F.4th at 80.

Here, Weber has clearly shown that he will suffer irreparable injury absent a preliminary injunction enjoining the sale of the Subject Vehicles. Weber presented evidence that the Subject Vehicles are vintage automobiles that he collected over numerous years and planned to feature in a museum. ECF No. 33–2 ¶¶ 5–6; ECF No. 64 at 16:23–17:13. This is the type of nonfungible, unique property for which an award of monetary damages would be inadequate. *See Robins v. Zwirner*, 713 F. Supp. 2d 367, 375 (S.D.N.Y. 2010) (finding irreparable harm where the defendants sought to sell three paintings, which were "unique works of art"); *see also Tom Doherty Assocs., Inc. v. Saban Entm't., Inc.*, 60 F.3d 27, 37 (2d Cir. 1995) (explaining that the Second Circuit has "found irreparable harm in the loss of a relatively unique product."). Under these circumstances, it would be "fundamentally unfair" to impose on Weber "a duty to accept . . . inherently different" vehicles as a substitute for those which he collected over numerous years. *See Robins*, 713 F. Supp. 2d at 375 (quotation

omitted).

Weber has also established that the harm posed by the sale is "actual and imminent" insofar as the Town previously sought to sell the Subject Vehicles and recently took affirmative steps to once again effectuate the sale of the vehicles. ECF No. 33–2 ¶ 9 (Town engaged auction house in March 2025 to oversee an online auction of Subject Vehicles); ECF No. 33–5 at 2 (Weber received a temporary restraining order in October 2022 to prevent the initial auction of the Subject Vehicles);[3] ECF No. 64 at 187:17–188:18 (testimony from Town Supervisor confirming that the Town would have sold the Subject Vehicles in March 2025 if a temporary restraining order were not in place). Based on the Town's prior attempts to sell the Subject Vehicles, there is little doubt that absent a preliminary injunction, the Town would sell the vehicles in the immediate future. Accordingly, Weber has shown that he would suffer irreparable harm in the absence of the injunction.

## II. Likelihood of Success on the Merits

To establish a likelihood of success on the merits, a plaintiff "'need not show that success is an absolute certainty. [They] need only make a showing that the probability of . . . prevailing is better than fifty percent.'" *Airbnb, Inc. v. City of New York*, 373 F. Supp. 3d 467, 480 (S.D.N.Y. 2019) (quoting *Eng v. Smith*, 849 F.2d 80, 82 (2d Cir. 1988)); *see Ass'n of Jewish Camp Operators v. Cuomo*, 470 F. Supp. 3d 197, 209 (N.D.N.Y. 2020) ("[A] likelihood of success requires a demonstration of a better

---

[3] *See* NYS Courts Electronic Filing, Case No. E67875, Dkt No. 17 (temporary restraining order issued by Hon. Diane Y. Devlin of NYS Supreme Court on October 6, 2022, enjoining the Town from selling the Subject Vehicles).

than fifty percent probability of success.") (quotation omitted); *V.D. v. State*, 403 F. Supp. 3d 76, 87 (E.D.N.Y. 2019).

A procedural due process claim requires a plaintiff to: "(1) identify a liberty or property interest, (2) show that the state has deprived the plaintiff of that interest, and (3) show that the deprivation was affected without due process." *Wheatley v. New York State United Tchrs.*, 80 F.4th 386, 392 (2d Cir. 2023). "The appropriate process depends on the balancing of three factors: (1) 'the private interest that will be affected by the official action;' (2) 'the risk of erroneous deprivation of such interest through the procedures used;' and (3) 'the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'" *Panzella v. Sposato*, 863 F.3d 210, 218 (2d Cir. 2017) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

### A. Property Interest

Here, the Court finds that Weber has presented sufficient evidence demonstrating a property interest in the Subject Vehicles. Specifically, Weber submitted a declaration stating that he and/or Route 5 Business Park, LLC, a limited liability company of which he is the sole member, owned the Subject Vehicles. ECF No. 33–2 ¶¶ 3–4. At the preliminary injunction hearing, Weber testified that he inherited a portion of the Subject Vehicles from his parents and purchased others personally or through his car dealership, American Classic Auto USA, which he solely operated as a d/b/a and dissolved shortly after his vehicles were confiscated. ECF No. 64 at 115:8-116:7; 119:3–120:15. The Court rejects the Town's contention that Weber

needed to submit ownership records from the New York State Department of Motor Vehicles to demonstrate a property interest under the Fourteenth Amendment. ECF No. 41 at 13–14. As the Second Circuit has explained, "[t]he due process protection afforded to property by the Fourteenth Amendment 'has never been interpreted to safeguard only the rights of undisputed ownership. Rather, it has been read broadly to extend protection to 'any significant property interest.'" *Pangburn v. Culbertson*, 200 F.3d 65, 70 (2d Cir. 1999); *see Sommerville v. Wright*, No. 12-CV-165, 2014 WL 794275, at *6 (E.D.N.Y. Feb. 25, 2014) ("[E]ven an individual who does not hold title at the time of his vehicle's seizure has a sufficient interest in the 'continued possession and use' of the vehicle to bring a due process claim."). Thus, for purposes of this motion, the Court concludes that Weber has sufficiently demonstrated a property interest in the Subject Vehicles.

## B. Deprivation

As to the second element, there is no dispute that the Town deprived Weber of his interest in the Subject Vehicles. Instead, the Town challenges Weber on the third element, that is whether the deprivation was affected without due process. On that issue, the Town maintains that Weber received adequate pre-deprivation process and possessed an adequate post-deprivation remedy. ECF No. 41 at 14–18. Specifically, the Town advances the following contentions: first, Weber's due process rights were not violated because he received numerous pre-deprivation letters from the Town concerning deficiencies at his Property and was on notice that the Town could invoke Paragraph Six of the SCO, which, according to the Town, allowed it to remedy the

deficiencies on the Property without a further court order; and second, there was no due process violation because Weber had a meaningful post-deprivation remedy in the form of an Article 78 proceeding under New York State law. *Id.*

Initially, the Court finds that Weber is likely to demonstrate that the availability of a meaningful post-deprivation remedy does not automatically satisfy the Due Process Clause. Generally, due process requires that a state afford persons "some kind of hearing" prior to depriving them of a liberty or property interest. *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003). However, "in certain circumstances, the lack of such predeprivation process will not offend the constitutional guarantee of due process, provided there is sufficient postdeprivation process." *Catanzaro v. Weiden*, 188 F.3d 56, 61 (2d Cir. 1999). "[T]he Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees." *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996) ("*Hellenic*") (citing *Hudson v. Palmer*, 468 U.S. 517, 532 (1984); *Parratt v. Taylor*, 451 U.S. 527, 541 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986)); *see Rivera-Powell v. New York City Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006). As the *Rivera-Powell* court explained:

> When the state conduct in question is random and unauthorized, the state satisfies procedural due process requirements so long as it provides meaningful post-deprivation remedy. *Id.; see Hudson,* 468 U.S. at 533, 104 S.Ct. 3194 (explaining that when deprivations are "random and unauthorized ... predeprivation procedures are simply impracticable since the state cannot know when such deprivations will occur" (internal quotation marks omitted)). In contrast, when the deprivation is pursuant to an established state procedure, the state can predict when

> it will occur and is in the position to provide a pre-deprivation hearing. *HANAC,* 101 F.3d at 880; *Parratt,* 451 U.S. at 541, 101 S.Ct. 1908. Under those circumstances, "the availability of post-deprivation procedures will not, *ipso facto,* satisfy due process." *HANAC,* 101 F.3d at 880.

470 F.3d at 465; *see also DiBlasio*, 344 F.3d at 302 (describing the "random and unauthorized" rule as an exception to the general requirement for a pre-deprivation hearing). The Second Circuit has held that "the acts of high-ranking officials who are 'ultimate decision-maker[s]' and have 'final authority over significant matters,' even if those acts are contrary to law, should not be considered 'random and unauthorized' conduct for purposes of a procedural due process analysis." *Rivera-Powell*, 470 F.3d at 465.

While "[t]he distinction between random and unauthorized conduct and established state procedures . . . is not clear-cut," *Rivera-Powell*, 470 F.3d at 465, "[t]he underlying question is whether the state [was] in a position to provide for pre-deprivation process." *Porter v. Town of Fine, New York*, No, 18-cv-1289, 2022 WL 4094516, at *7 (N.D.N.Y. Sept. 6, 2022) (quotation omitted); *see Hellenic*, 101 F.3d at 880 ("The controlling inquiry is solely whether the state [wa]s in a position to provide for predeprivation process."). "The Supreme Court's different treatment of the two situations rests on pragmatic considerations . . . When a deprivation occurs because of a random, arbitrary act by a state employee it is difficult to conceive of how the State could provide a meaningful hearing before the deprivation takes place." *Hellenic*, 101 F.3d at 880 (quotation and brackets omitted); *see Locurto v. Safir*, 264 F.3d 154, 172 (2d Cir. 2001) ("The rationale for this principle is plain: because the

challenged misconduct is random and unauthorized, it is impossible for the government to anticipate and prevent the wrongful loss of liberty or property in advance, and it has no realistic alternative other than to adopt remedies capable of righting the wrong after the deprivation.").

Here, Weber is likely to demonstrate that the deprivation of the Subject Vehicles was not "random and unauthorized" because it was made by high-ranking officials with final authority over significant matters. The evidence presented at the preliminary injunction hearing demonstrates that the decision to seize the vehicles was likely made by the Town Board and/or the Town Supervisor. *See* ECF No. 64 at 181:11–14 (Town Supervisor, Jim Farnholz, explaining that the Town Board contracted with a company to remove the Subject Vehicles); ECF No. 64 at 145:2–7 (Town code enforcement official testifying that the plan to confiscate the vehicles could have been made by Farnholz); ECF No. 64 at 199:21–200:–4 (Town attorney testifying that he was instructed by Farnholz to address the purported non-compliance with the SCO because the Town needed to take action); ECF No. 64 at 33:6–9 (an unnamed Town Board member was present on the Property when the vehicles were seized). Thus, Weber is likely to establish that the deprivation was ordered by high-ranking officials within the Town and was not "random or unauthorized." *See New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*, 442 F.3d 101, 116 (2d Cir 2006) (holding the actions of the town supervisor were not random or unauthorized where "the seizure [of the plaintiff's ambulances] was ordered not by any low ranking employee, but by [the town supervisor] . . ., who was the Town's

highest ranking official, chairman of the Town's governing body, and a 'policymaking official' . . . his actions with respect to the [plaintiff] were the 'actions of the town itself.'"); *RR Vill. Ass'n Inc. v. Denver Sewer Corp.*, 826 F.2d 1197, 1204 (2d Cir. 1987) ("[T]he action of a high-ranking official body, such as the [t]own [b]oard, which has final authority over the decision-making process cannot be considered random and unauthorized.") (internal quotation marks omitted); *Morizio v. Town of Oyster Bay*, No. cv-14-1241, 2015 WL 13721649, at *4 (E.D.N.Y. April 24, 2015) (finding deprivation not random and unauthorized where it occurred "through acts of [t]own officials (including the Commissioner of the [Department of Planning and Development within the Town of Oyster Bay], a high-ranking official . . . "); *Holmes v. Town of East Lyme*, 866 F. Supp. 2d 108, 127 (D. Conn. 2012) ("Defendant Formica[,] First Selectman of the Town of East Lyme,] is a 'high-ranking official,' and accordingly, the 'random and unauthorized' exception to pre-deprivation process does not apply here.").

The Court's finding is also consistent with the rationale undergirding the distinction between random and unauthorized conduct and established state procedures. *See Hellenic*, 101 F.3d at 880 ("The controlling inquiry is solely whether the state [wa]s in a position to provide for predeprivation process."). Here, the Town was certainly in a position to provide a pre-deprivation hearing to assess Weber's compliance with the SCO. The Town waited over a year to inspect the property for compliance with the SCO and then weeks before effectuating the deprivation after the inspection. ECF Nos. 33-4 ¶ 6; 40 ¶¶ 25–26. The Town clearly knew when the

14

vehicles would be seized and could have provided a pre-deprivation hearing on the issue of compliance.

### C. Adequacy of Process

The Court must next assess the adequacy of the process provided by the Town. The critical point in time is when the Town decided to seize the vehicles pursuant to the SCO and whether Weber was entitled to be heard on the issue of compliance. The Court assesses the adequacy of the process by considering the *Mathews* factors: "(1) 'the private interest that will be affected by the official action;' (2) 'the risk of erroneous deprivation of such interest through the procedures used;' and (3) 'the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'" *Panzella*, 863 F.3d at 218 (quoting *Mathews*, 424 U.S.at 335); *see Rivera-Powell*, 470 F.3d at 466 (explaining if the court finds that the state acted pursuant to "established state procedure, such that the availability of a post-deprivation remedy would not *automatically* satisfy due process, [the court] would merely go on to determine what process was due" by balancing the *Mathews* factors).

First, Weber possessed a strong interest in preventing the Subject Vehicles from being confiscated. *See Mercedes-Benz Fin. Servs. USA, LLC v. City of New York*, 770 F. Supp. 3d 643, 659 (S.D.N.Y. 2025) ("[The] [p]laintiff's private interest . . . in the present value of the [v]ehicle is considerable.") (quotation omitted). The Subject Vehicles are vintage, historical automobiles that he collected over numerous years and planned to feature in a museum. According to Weber, he spent thousands of

dollars and hundreds of hours attempting to bring the Property into compliance with the SCO. The Town's seizure of the vehicles affected a significant private interest.

Second, the risk of erroneous deprivation through the procedures used was high given ambiguities in the SCO. As Magistrate Judge Schroeder found, "the SCO [was] not a model of clarity . . . ." ECF No. 9 at 16. For instance, the SCO required Weber to remove debris from certain buildings and to remove all vehicles from public view. If Weber failed to comply with those requirements, the SCO authorized the Town to remove the debris and to impound the vehicles that remained in public view. However, the SCO did not clearly define what it meant for vehicles to be "in public view" in the first place. Indeed, the hearing before this court demonstrated significant disagreement between the parties as to whether the SCO was complied with or not. Further, despite the fact that the state court specifically retained jurisdiction over enforcement of the SCO, the Town did not return to state court for a non-compliance determination, nor did it give Weber an opportunity to be heard in state court to dispute the Town's determinations, before seizing the vehicles and enforcing the order. *See Mercedes-Benz Fin. Servs. USA, LLC*, 770 F. Supp. 3d at 659 (finding risk of erroneous deprivation "'high,' because without a hearing, [p]laintiff has no opportunity to present any argument before a neutral arbitrator about whether [the defendants are] actually entitled to possess the [v]ehicle . . . "). Of note, the Town allegedly made errors during the seizure inasmuch as it purportedly confiscated vehicles that were stored inside of buildings on the Property. ECF No. 64 at 51:3–13 (Weber testifying that most of the vehicles seized were indoors).

Third, a hearing to assess Weber's compliance with the SCO would have imposed minimal burdens on the Town. The Town waited over a year to assess compliance with the SCO and then weeks before effectuating the seizure after the inspection. In other words, there was no urgency for the Town to act when it did. The Town clearly had time to return to court for a judicial interpretation of the court order. Instead, the Town made the unilateral decision to seize and impound the vehicles at a cost of $50 per vehicle per day. The Town has now amassed millions of dollars in storage fees. In light of the storage fee debt that resulted from the seizure, the fiscal burden of returning to court for an additional hearing to protect Weber's due process rights was minimal.

In sum, Weber is likely to establish that the *Mathews* factors support a finding that the Town violated the Fourteenth Amendment's guarantee of due process by failing to provide him with an opportunity to contest his purported non-compliance with the SCO before seizing and attempting to auction the Subject Vehicles. *See Mercedes-Benz Fin. Servs. USA, LLC*, 770 F. Supp. 3d at 660.

## III. Balance of Hardships and Public Interest

The Court finds that the balance of hardships and the public interest favor issuing the injunction. "When confronted with a motion for a preliminary injunction, a court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Bank of Am., N.A. v. Won Sam Yi*, 294 F. Supp. 3d 62, 81 (W.D.N.Y. 2018) (quotation omitted). "[A] court must consider the balance of hardships between the plaintiff and defendant and issue

the injunction only if the balance of hardships tips in the plaintiff's favor." *Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir. 2010). "The public interest question does not look much different from the balance of the equities, except the scope is expanded to consider what would be best for society as a whole." *Brown v. Maher*, 597 F. Supp. 3d 541, 549 (N.D.N.Y. 2022).

Here, the Court finds that the balance of hardships weighs against the Town and decidedly in Weber's favor. If the Court were to deny Weber's request for a preliminary injunction, the Town would certainly sell the Subject Vehicles, which would deprive Weber of unique, vintage property that is not easily replaced by an award of monetary damages. In contrast, if the injunction were granted, the Town would continue to accrue storage fees, which it already cannot afford and will pay after it negotiates a reduction in the cost. ECF No. 64 at 191:18–192:15. Simply stated, the detriment to the Town would be monetary whereas the injury to Weber could not easily be remedied by monetary damages.

Moreover, despite the Town's previous steps it has taken to sell the Subject Vehicles, it is not clear how the Town has any possessory interest in the vehicles to accomplish this. The vehicles were seized due to alleged civil violations — not criminal violations. Therefore, the vehicles are not subject to civil forfeiture as they might be if Weber was arrested and the cars were obtained for their evidentiary value. *See Santander Consumer USA, Inc. v. County of Nassau*, 623 F. Supp. 3d 6, 14 (E.D.N.Y. 2022).

The Court also concludes that granting the injunction is in the public's favor.

As discussed above, Weber is likely to succeed in demonstrating that the Subject Vehicles were seized by the Town without due process. There is a strong public interest in preventing the government from arbitrarily confiscating a person's property without due process. Based on the foregoing, the Court finds that Weber is entitled to a preliminary injunction.

## IV. Security Bond

Since the Court has found that Weber is entitled to a preliminary injunction, the Court must consider whether — and in what amount — it should order him to provide a security. Pursuant to Federal Rule of Civil Procedure 65(c), a "court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Rule 65(c)'s security requirement is designed to "assure[ ] the enjoined party that it may readily collect damages from the funds posted in the event that it was wrongfully enjoined, and that it may do so without further litigation and without regard to the possible insolvency of the plaintiff." *Nokia Corp. v. InterDigital, Inc.*, 645 F.3d 553, 557 (2d Cir. 2011). Courts have broad discretion to set the amount of a bond or to dispense with it all together. *Can't Live Without It, LLC v. ETS Express, Inc.*, No. 17-CV-3506 (JSR), 2017 WL 4776741, at *2 (S.D.N.Y. Oct. 10, 2017); *see State Farm*, 120 F.4th at 86 ("Courts have the discretion . . .to require no security at all depending on the specific circumstances.").

The Court rejects the Town's contention that Weber should post a bond equal

to the relief requested in his notice of claim filed in state court ($12.4 million) or in his federal complaint ($5 million). ECF No. 41 at 19. The Town's contention lacks merit inasmuch as the amount sought by Weber is irrelevant to the pertinent inquiry under Rule 65(c), which requires the Court to assess the costs and damages that the Town will sustain in the event it is later determined that it was wrongfully enjoined. The Court also declines Weber's request to dispense with the security requirement altogether because the Town will sustain damages and costs in the form of storage fees while the injunction is in place.

Here, the Court concludes that the appropriate metric by which to measure damage to the Town under Rule 65(c) is the cost to store the Subject Vehicles following issuance of the injunction. However, that portion of the cost is indeterminate at this stage of the proceeding because the Subject Vehicles are currently being stored at Valley Sales & Service ("VS&S") at a rate of $50 per vehicle, per day. ECF No. 64 at 63:16–64:1. Moreover, that portion of the cost will be part of a larger negotiation between the Town and VS&S concerning the total storage fee, as the Town Supervisor confirmed that the Town could not afford the storage fee as it existed on the day of the preliminary injunction hearing. *See* ECF No. 64 at 184:10–185:15, 190:9–192:15. Given these uncertainties, the Court finds it appropriate to order Weber to post a security in the amount of $100,000, which represents a portion of the storage costs.

## CONCLUSION

For the reasons stated above, Weber's motion for a preliminary injunction

(ECF No. 33) is GRANTED. The Town, its officers, agents, servants, employees, contractors, and attorneys, and those acting in concert with them, are enjoined from enforcing or taking any action to sell the Subject Vehicles while the preliminary injunction is in place, effective upon the condition that Plaintiff Weber provide adequate proof to the Court that it has posted a bond in the amount of $100,000 within ten calendar days of the date of this Decision and Order. In the event that Weber does not timely post security and provide adequate proof, the temporary restraining order granted on March 21, 2025 and March 24, 2025 will expire. ECF No. 37-38.

       SO ORDERED.

DATED:      September __11__, 2025
              Rochester, New York

HON. MEREDITH A. VACCA
United States District Judge